## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## AT LOUISVILLE

**KENNETH DE'SHAWN SPLUNGE**                                                                 **PLAINTIFF**

**v.**                                                      **CIVIL ACTION NO. 3:06CV-P86-H**

**LT. HANDLEY** *et al.*                                                                     **DEFENDANTS**

### MEMORANDUM OPINION

Plaintiff Kenneth De'Shawn Splunge filed a *pro se* complaint pursuant to 42 U.S.C. § 1983. This matter is before the Court for *sua sponte* screening of the complaint pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997). For the reasons that follow, the instant action will be dismissed.

### I. SUMMARY OF CLAIMS

Plaintiff, a pretrial detainee at the Louisville Metro Corrections Department ("Metro Corrections"), brings this civil rights complaint against Metro Corrections and nine of its officers. The officers are Director Tom Campbell, Assistant Director Dwayne Clark, Lieutenants Handley and Norris, Sergeant Arnold, and Officers Wesley, Conley, Allen and Spenton. Plaintiff sues each Defendant in his or her official capacity only and seeks monetary and punitive damages in the amount of $2.5 million each.

Factually, Plaintiff describes three incidents. The first occurred on November 4, 2004, while he was "on the 5th floor in the (HOJ) [] on East Walk in cell three." Plaintiff reports that he was agitated and wanted to be moved from the walk because it was noisy, so he flooded his cell. The "sort team" responded. Plaintiff claims that he cooperated by getting on his knees. He was shackled, escorted to "med-walk," taken to a cell, and placed on a "rack" face first causing his glasses to fall off. An unidentified officer purposely stepped on the glasses. The shackles

were then removed. When Plaintiff tried to reach for his glasses, Defendant Sgt. Arnold told the "sort officers," including Defendant Spenton, "to get him boys." Plaintiff claims that "they" used excessive force by bashing his face into the metal rack and spraying him with mace. He was also put in a chair and humiliated. Non-defendant Mrs. Evette Peoples told Plaintiff that she filed a grievance, and non-defendant Sgt. Donald Skaggs witnessed the incident.

On March 9, 2005, Plaintiff claims that he was harassed again while Defendant Director Campbell and Defendant Assistant Director Clark were on the 5th floor. Defendants Lt. Norris and Officers Conley and Wesley were ordered by Lt. Norris to strip search Plaintiff and three other inmates. No contraband was found, but Lt. Norris "made a joke towards" Plaintiff claiming that he had found a lighter.

Finally, on March 28, 2005, Plaintiff had to go to court. Prior to leaving the jail, the "sort team" placed shackles very tightly around Plaintiff's ankles. Plaintiff asked Defendant Officer Allen to loosen the shackles, but Officer Allen told Plaintiff that "if the other officers could stick a finger through they were alright." Plaintiff reports that he now has scars on the back of both ankles where the shackles "cut me to the white meat." He advises that non-defendants Nurse Cindy Smith and Officer Robert Whiteside witnessed the incident.

Plaintiff reports that although there is a grievance procedure at Metro Corrections, he did not present his claims through that procedure. He explains, "At the time I didn't file for fear of more harassment."

## II. STANDARD OF REVIEW

Under 28 U.S.C. § 1915A, this Court must review the instant action. 28 U.S.C. § 1915A ("The court shall review, . . . a complaint in a civil action in which a prisoner seeks redress from

a governmental entity or officer or employee of a governmental entity."); *McGore v. Wrigglesworth*, 114 F.3d 601, 604-05 (6th Cir. 1997). Upon review, this Court must dismiss "the complaint, or any portion of the complaint, if the complaint—(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." § 1915A(b).

A complaint may be dismissed as frivolous under § 1915A if it is premised on a nonexistent legal interest or delusional factual scenario. *Neitzke v. Williams*, 490 U.S. 319, 329-30 (1989). A complaint, or portion thereof, should be dismissed for failure to state a claim upon which relief may be granted "only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). In reviewing a complaint under this standard, the Court must accept all factual allegations contained in the complaint as true and must also construe the pleading in the light most favorable to the plaintiff. *Bibbo v. Dean Witter Reynolds, Inc.*, 151 F.3d 559, 561 (6th Cir. 1998).

### III. ANALYSIS

**A. November 4, 2004, Incident**

Because § 1983 does not provide a statute of limitations, federal courts borrow the forum state's statute of limitations for personal injury actions. *Wilson v. Garcia*, 471 U.S. 261, 275-280 (1985). Thus, in Kentucky § 1983 actions are limited by the one-year statute of limitations found in KRS 413.140(1)(a). *Collard v. Ky. Bd. of Nursing*, 896 F.2d 179, 182 (6th Cir. 1990). "[T]he statute of limitations begins to run when the plaintiff knows or has reason to know of the injury which is the basis of his action and that a plaintiff has reason to know of his injury when

3

he should have discovered it through the exercise of reasonable diligence." *Collard*, 896 F.2d at 183. Though the statute of limitations is an affirmative defense, a court may raise the issue *sua sponte* if the defense is obvious from the face of the complaint. *Fields v. Campbell*, 39 Fed. Appx. 221, 223 (6th Cir. 2002) (citing *Haskell v. Washington Twp.*, 864 F.2d 1266, 1273 (6th Cir. 1988)).

Plaintiff knew or had reason to know of his injury on November 4, 2004, the date of the alleged assault. Thus, the limitations period began to run on that date and ended one year later on November 4, 2005. Plaintiff's complaint, however, was not filed with this Court until February 14, 2006,[1] months after the statute of limitations had run. The § 1983 claims stemming from the November 4, 2004, incident are thus time barred and will be dismissed as frivolous. *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) (dismissing a claim as frivolous where barred by the applicable statute of limitations).

**B. <u>March 2005 Incidents</u>**

The Prison Litigation Reform Act of 1995 ("PLRA") established an administrative exhaustion requirement codified at 42 U.S.C. § 1997e(a). Section 1997e(a) provides, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." In enacting this provision, Congress

---

[1] Because Plaintiff is a prisoner, the "mailbox rule" applies. Under the mailbox rule, a civil action is deemed filed on the date that it is deposited in the prison mail system for mailing. *See Houston v. Lack*, 487 U.S. 266, 270 (1988) (holding that a *pro se* prisoner's notice of appeal on habeas corpus review is deemed filed on the date that it is turned over to prison officials for transmittal to court); *Richard v. Ray*, 290 F.3d 810, 813 (6th Cir. 2002) (holding that the mailbox rule "applies to civil complaints filed by pro se petitioners incarcerated at the time of filing"). Absent evidence to the contrary, the Court presumes that Plaintiff deposited his complaint in the prison mail system on February 14, 2006, the date of signing.

imposed a prerequisite upon prisoners seeking to bring conditions-of-confinement claims under 42 U.S.C. § 1983. *Porter v. Nussle*, 534 U.S. 516, 524 (2002). The exhaustion of administrative remedies is now mandatory, rather than discretionary. *Id.*; *Brown v. Toombs*, 139 F.3d 1102 (6th Cir. 1998).

"[T]he PLRA exhaustion requirement requires proper exhaustion." *Woodford v. Ngo*, -- U.S. --, 126 S. Ct. 2378, 2387 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 2386. An inmate must also "administratively exhaust his or her claim as to each defendant associated with the claim." *Burton v. Jones*, 321 F.3d 569, 574 (6th Cir. 2003), and complete exhaustion of administrative remedies is required even if the administrative process cannot provide the plaintiff with the relief, such as monetary damages, he seeks. *Booth v. Churner*, 532 U.S. 731, 741 (2001).

The plaintiff has the burden of pleading exhaustion of administrative remedies. *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000). To establish exhaustion of available administrative remedies, a prisoner should attach to the complaint any decision demonstrating the administrative disposition of his claims. *Wyatt v. Leonard*, 193 F.3d 876, 878 (6th Cir. 1999); *Brown*, 139 F.3d at 1104. If written documentation is not available, a prisoner must describe with specificity the administrative proceeding and its outcome. *Knuckles El*, 215 F.3d at 642.

The Louisville Metropolitan Corrections System has a multi-step grievance mechanism available to all inmates which is set forth in Policy No. 11.14. The inmate must first attempt to

resolve his grievance through an informal resolution with the assistance of a staff member. If the inmate is dissatisfied with the proposed resolution at this stage, he may submit a formal grievance to a staff member or forward the grievance to the Shift Commander for review. If the Shift Commander cannot resolve the issue to the inmate's satisfaction, the inmate may file an appeal to the appropriate Divisional Director. If the inmate is not satisfied with the decision by the Divisional Director, he may file an appeal with the Lieutenant Colonel of the corrections department. The Lieutenant Colonel may act on the appeal or forward the matter to an investigator for further review. Finally, if the grievance is not resolved at this stage, the inmate may appeal the decision to the Chief/Director of Metro Corrections. Once the inmate has taken the grievance through these channels, he has exhausted his administrative remedies. If during the course of the process, the appropriate official fails to respond to his grievance, the inmate may move on to the next step in the review process.

In the instant case, Plaintiff concedes that he did not follow the grievance procedure available at Metro Corrections offering only that "At the time I didn't file for fear of more harassment." Plaintiff's "conclusory allegations of fear with respect to filing a grievance are not sufficient to excuse his failure to exhaust his administrative remedies." *Boyd v. Corr. Corp. of Am.*, 380 F.3d 989, 997-98 (6th Cir. 2004), *cert. denied*, 544 U.S. 920 (2005). "Because a prisoner-plaintiff must 'describe with specificity the administrative proceeding and its outcome[,]' a prisoner who contends that he failed to exhaust out of fear should also have to 'describe with specificity' the factual basis for his fear." *Id.* at 998 (quoting *Knuckles El*, 215 F.3d at 642).

In Plaintiff's statement-of-claim portion of the complaint, he describes only two, isolated, and unrelated excessive-force incidents and one, unrelated strip-search incident. He alleges neither that any Metro Corrections official has any personal animus towards him nor that he or any other inmate has been harassed in the past for filing grievances. He alleges nothing aside from his broad and conclusory claim of fear of harassment to explain why he failed to utilize the jail's grievance mechanism.[2]

Because Plaintiff does not describe with specificity the factual basis for his fear of harassment, the March 2005 claims will be dismissed without prejudice for failure to exhaust available administrative remedies.

The Court will enter an Order consistent with this Memorandum Opinion.

Date:

cc:     Plaintiff, *pro se*
        Defendants
        Jefferson County Attorney
4412.005

---

[2] In *Porter v. Nussle*, 534 U.S. 516 (2002), the prisoner-plaintiff "alleged . . . not only the beating he suffered on June 15, 1996; he also alleged, extending before and *after that date*, 'a prolonged and sustained pattern of harassment and intimidation by corrections officers.'" *Id.* at 530 (emphasis added). Notwithstanding these complaints of continued harassment and intimidation, the United States Supreme Court held "that the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.* at 532. Plaintiff's non-specific allegation of fear of harassment fails to excuse him from this all-encompassing exhaustion requirement. As observed by the Supreme Court, "It seems unlikely that Congress, when it included in the PLRA a firm exhaustion requirement, meant to leave the need to exhaust to the pleader's option." *Id.* at 530.